IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN LEIGH,<br><br>  Petitioner,<br><br>  v.<br><br>ANTHONY KANE,<br><br>  Respondent. | No. C 06-2947 CRB<br><br>**ORDER DENYING PETITION FOR HABEAS CORPUS** |

Petitioner Kevin Leigh is currently incarcerated at the Correctional Training Facility in Soledad, California. Petitioner pleaded guilty to second degree murder in the Superior Court of the State of California. The court sentenced him to a term of 15 years to life, plus a one year enhancement. Id. Petitioner appeared before the Board of Parole Hearings (the "Board") six times between 1994 and 2003.[1] The Board denied parole at the first five hearings, but set a parole date for Petitioner at the 2003 hearing. The following year, however, California's Governor reversed the Board's decision. This petition for habeas corpus arises from the Governor's decision. After carefully considering the parties' papers and the continually evolving law, the Court DENIES the petition.

//

//

---

[1] Petitioner appeared before the Board for a seventh time in 2005, and was denied parole. However, the 2005 decision of the Board is irrelevant to this habeas petition which relates only to the 2003 hearing and subsequent reversal by the Governor.

# I. BACKGROUND

## A. The Committed Offense

In February 1985 Petitioner murdered Rick Diamonon. For several days leading up to the committed offense Petitioner, his co-defendant Mark Smith, Diamonon, and several others were engaged in heavy cocaine use. The night of the offense the group drove around in a rented limousine. That night Diamonon delivered a quantity of cocaine that Smith had purchased; however, Smith determined that the cocaine had been altered, and became very upset with Diamonon. Someone in the car struck Diamonon several times in the head and body. The limousine driver then dropped off Petitioner, Smith and Diamonon in a deserted area of Topanga Canyon. Diamonon began to run, and Smith shot him in the arm and hip. Diamonon fell into a creek. Petitioner then held Diamonon's head under the water, and Diamonon died. The autopsy report states that Diamonon died of "drowning due to or as a consequence of blunt force trauma to the head and gunshot wounds to the extremities."

The government initially charged Petitioner with murder, robbery, kidnaping, and possession of cocaine. In a plea agreement approved by the California Superior Court, Petitioner pleaded guilty to second degree murder with an enhancement of principal being armed, and the government dismissed the remaining counts. On July 8, 1987, the court sentenced Petitioner to a term of 15 years to life, with a one year enhancement.

## B. The 2003 Parole Eligibility Hearing

Petitioner appeared before the Board for parole consideration five times between 1994 and 2002. At each hearing the Board denied parole for a period of one or two years. On November 19, 2003, Petitioner appeared before the Board for his sixth parole hearing. This time the Board found Petitioner suitable for parole and granted him a parole date. In doing so, the Board noted his lack of a prior criminal history, educational achievements while in prison, participation in self-help and other programs, positive psychological evaluations, and realistic parole plans. The decision was then reviewed and approved by the Board, and the Board's decision became final on March 18, 2004.

//

### C.     The Governor's Reversal

Governor Schwarzenegger then reviewed the Board's decision to grant parole to Petitioner, which he is entitled to do under Penal Code section 3041.2.  On April 15, 2004, the Governor reversed the Board's decision.  Although the Governor noted Petitioner's accomplishments and positive record while in prison, he stated that he would not "overlook or negate the gravity of the particularly repugnant crime Mr. Leigh committed simply because he has behaved as he should in prison."  He described the offense for which Petitioner was committed "especially cruel and atrocious," and found that Petitioner demonstrated an "exceptionally callous disregard" for human suffering.  Finally, the Governor determined that Petitioner's motive for committing the offense was "exceedingly trivial."

## II. PROCEDURAL HISTORY

On August 17, 2004, Leigh filed a petition for writ of habeas corpus in the California Superior Court for the County of Los Angeles.  The Superior Court denied his petition on the merits, concluding that the record contained "some evidence" to support the Governor's finding that Petitioner was unsuitable for parole.  First, the court noted that Petitioner physically held the victim, who had already been shot, under water and drowned him.  The court found it proper for the Governor to rely on this fact in finding the commitment offense "especially heinous, atrocious, or cruel."  Second, the court stated that the murder resulted from the belief that the victim gave the group altered cocaine, which constituted some evidence that the motive behind the murder was "very trivial."

Petitioner timely appealed to the California Court of Appeal, which summarily denied the petition.  Petitioner then filed a timely petition for review with the California Supreme Court. On December 21, 2005, the Supreme Court denied the petition for review.  Petitioner filed the instant petition on May 1, 2006.  Respondent filed a motion to dismiss, arguing that Petitioner did not exhaust his state remedies.  After considering the issue, the Court found that Petitioner had exhausted his state remedies. Order on Motion to Dismiss, Dec. 18, 2006.

//

//

### III. STANDARD OF REVIEW

The Court may entertain a petition for a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

Under the "contrary to" clause, a federal habeas court must only consider as clearly established federal law "the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision." Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). "While circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." Id. (internal quotations omitted.) Under the "unreasonable application" clause, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411.

When determining whether a state court decision affirming a denial of parole merits habeas relief, the Ninth Circuit focuses on the reasons set forth in the denial. See Rosas v. Nielson, 428 F.3d 1229, 1232 (9th Cir. 2005). If the determination of unsuitability for parole is supported by "some evidence, with some indicia of reliability," the state court decision affirming the denial neither unreasonably applies federal law nor rests on an unreasonable determination of facts. See id. at 1232-33.

4

## IV. DISCUSSION

**A.   The Governor's Reversal of the Board's Decision Did Not Violate Petitioner's Due Process Rights.**

Petitioner advances a number of related arguments in support of his contention that the Governor's reversal of the Board's grant of parole violated his right to due process. First, Petitioner contends that the Governor's denial of parole denied him a federally protected liberty interest. Second, Petitioner argues that the Governor violated Petitioner's due process rights by relying on the commitment offense in denying parole. Third, Petitioner claims the Governor failed to provide any factual support for his decision that Petitioner posed an unreasonable risk of danger if paroled. Finally, Petitioner contends the Governor violated his due process rights by relying on "unconstitutionally vague terms" to deny parole.

California inmates whose sentences provide for the possibility of parole have a constitutionally protected liberty interest in having their parole release date set, "a liberty interest that is protected by the procedural safeguards of the Due Process Clause." Irons v. Carey, 479 F.3d 658, 662 (9th Cir. 2007); see also Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003). Under clearly established Supreme Court law, the denial of parole to a prisoner deprives him of due process if the decision is not supported by "some evidence in the record." Sass, 461 F.3d at 1128-29 (citing Superintendent v. Hill, 472 U.S. 445, 457 (1985)); see also Biggs, 334 F.3d at 915.

When a federal habeas court assesses whether a parole suitability determination was supported by the requisite "some evidence" rule, the analysis is framed by the relevant state law. Irons, 479 F.3d at 662; Biggs, 334 F.3d at 915. Accordingly, here the Court must look to California law, and then must review the record to determine whether the state court decision that found the Governor's decision was supported by "some evidence" constituted an unreasonable application of the "some evidence" standard. Irons, 479 F.3d at 662.

Under California law a prisoner's parole date must normally be set before he has served the minimum term of his sentence. In re Dannenberg, 34 Cal. 4th 1061, 1078 (2005) (citing Cal. Code Regs., tit. 15 § 2402). However, parole may be denied if it is determined

5

1  that the prisoner "will pose an unreasonable risk of danger to society if released from prison."
2  Id. In deciding whether a prisoner is presently too dangerous for parole, a prisoner's
3  commitment offense may be considered only if the Board or Governor can "point to factors
4  beyond the minimum elements of the crime for which the inmate was committed" that
5  demonstrate a present danger to society if released. Id. at 1071. Such factors include a
6  finding that "[t]he offense was carried out in a manner which demonstrates an exceptionally
7  callous disregard for human suffering," or that "[t]he motive for the crime is . . . very trivial
8  in relation to the offense." Irons, 479 F.3d at 663 (citing Cal. Code Regs., tit. 15 §
9  2402(c)(1)).            I

10    In Irons, the petitioner was convicted of second degree murder in the death of his
11  housemate and was sentenced to 17 years to life. Id. at 660. Irons confronted the victim over
12  a suspicion that he was dealing drugs and stealing from several housemates. Id. An
13  argument ensued, and Irons then shot and stabbed the victim to death. Id. Irons left the
14  victim's body for ten days, and then drove it to the coast, where he weighed the body down
15  and disposed of it in the ocean. Id.

16    At the time of the parole hearing at issue in the case, Irons had served 16 years in
17  prison. Id. Throughout his confinement Irons' conduct was exemplary, and at the time of his
18  parole hearing he had solid plans for the future. Id. at 660-61. Despite this the Board denied
19  parole, basing its decision on three factors. Id. at 661. First and foremost, the Board relied
20  on the commitment offense itself, finding that the crime was "especially cruel and callous,"
21  and that the "motivation for the killing was trivial." Id. Second, the Board found Irons
22  needed therapy and continued participation in self-help programs. Id. Third, the Board
23  observed that when asked whether he would kill again, Irons said "I don't think so." Id.

24    In analyzing whether the Board's decision to deny parole was supported by "some
25  evidence," the Ninth Circuit found that there was no evidentiary support for the second and
26  third factors. Id. at 663. However, the court concluded that, despite Irons' good conduct in
27  prison and that all other factors militated in favor of a finding of suitability, in light of
28  Dannenberg and Sass it was "unable to conclude that the Board's findings regarding the

nature of the commitment offense were without some evidentiary support." Id.  It pointed to the Board's determination that the commitment offense was "especially cruel and callous," and that it was disproportionate to the "trivial" provocation.

In Dannenberg, the California Supreme Court addressed a similar challenge to a Board's denial of parole based on petitioner's commitment offense, despite the fact that he was a "model prisoner." 34 Cal. 4th at 1074.  The court held that the Board's determination of unsuitability for parole was supported by "some evidence" because the Board found the crime to be "especially callous and cruel" and was based on a "trivial" motivation. Id. at 1075.

The facts here are similar.  The record of the Board's 2003 hearing demonstrate that Petitioner was a model prisoner.  Nevertheless, in reviewing the record, the Governor found the commitment crime "especially cruel and atrocious," and found that Petitioner demonstrated an "exceptionally callous disregard" for human suffering.  Additionally, the Governor determined that Petitioner's motive for committing the offense was "exceedingly trivial."  As in Irons, and despite the fact that all other factors militated in favor of a finding of suitability, in light of Dannenberg, Sass and Irons, this Court cannot conclude that the Governor's reversal of the Board's grant of parole based on the nature of the commitment offense was without some evidentiary support. See Irons, 479 F.3d at 663.

In Biggs, the Ninth Circuit stated that reliance "on an unchanging factor [such as] the circumstance of the offense . . . runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." 334 F.3d at 917.  Additionally, in Irons the Ninth Circuit again stated that "in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." 479 F.3d at 665.  However, in both cases this language was dicta, and the court in Biggs and Irons in fact found no violation of due process. See Biggs, 334 F.3d at 913; Irons, 479 F.3d at 664-65.  As such, there is no authoritative case law that requires or even permits that this Court find a violation of Petitioner's due process rights.

1	The Court notes that this case differs from <u>Irons</u>, <u>Biggs</u> and <u>Sass</u> in that all three
2 involved habeas petitioners that had not yet served the minimum number of years to which
3 they had been sentenced at the time of the challenged parole denial. <u>Irons</u>, 479 F.3d at 665;
4 <u>Biggs</u>, 334 F.3d at 912; <u>Sass</u>, 461 F.3d at 1125. The Ninth Circuit emphasizes this point in
5 <u>Irons</u>, and in doing so suggests that there could be a due process violation if the prisoner had
6 already served his minimum sentence. <u>Irons</u>, 479 F.3d at 665. Although Petitioner had
7 served more than his minimum sentence at the time of the Governor's denial of parole, the
8 factual situation here is actually not that different from <u>Irons</u>. At the time of the parole
9 hearing at issue in <u>Irons</u> the petitioner had served 16 years of a 17 years to life sentence. 479
10 F.3d at 660. Here, at the time of the Governor's denial of parole, Petitioner had served
11 between 16.5 and 17 years of a 15 years to life sentence with an additional one year
12 enhancement. So where as the petitioner in <u>Irons</u> had served just under his minimum
13 sentence, Petitioner here had served just over his minimum term at the time of the parole
14 denial. Again, there is no authoritative case law that clearly establishes that this factual
15 scenario amounts to a due process violation.

16	This case is distinguishable from the Court's decision in <u>Brown v. Kane</u>, 05-5188
17 CRB (N.D. Cal. May 2, 2007) for the same reason. In <u>Brown</u>, at the time the Governor
18 reversed the Board's parole decision the petitioner had served a "substantial amount of time
19 beyond his minimal sentence," indeed, 10 years more than the 15 year minimum sentence.
20 As is explained above, at the time of the Governor's decision here petitioner's incarceration
21 had barely exceeded his minimum sentence.

22	**B.	The Terms of Petitioner's Plea Agreement Were Not Violated.**

23	A criminal defendant has a due process right to enforce the terms of his plea
24 agreement. <u>Santobello v. New York</u>, 404 U.S. 257, 261-62 (1971) (holding that "[w]hen a
25 plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can
26 be said to be a part of the inducement or consideration, such a promise must be fulfilled.");
27 <u>accord</u> <u>United States v. Hallam</u>, 472 F.2d 168, 169 (9th Cir. 1973) (per curiam) ("It is clear
28 from *Santobello* . . . that due respect for the integrity of plea bargains demands that once a

8

defendant has carried out his part of the bargain the Government fulfill its part."). However, a defendant must produce objective evidence that there was a breach. See Santobello, 404 U.S. at 258, 262 (finding violation of the plea agreement where the prosecutor agreed to make no recommendation of a sentence, but later recommended the maximum sentence).

Petitioner cites two cases, Brown v. Poole, 337 F.3d 1155 (9th Cir. 2003) and Buckley v. Terhune, 441 F.3d 688 (9th Cir. 2006), where the Ninth Circuit found a prisoner sentenced to fifteen years to life was entitled to parole based on the state's breach of a plea agreement. Citing Santobello, the court in both of these cases found a breach of the plea agreement based on objective evidence supporting a defendant's belief that the plea agreement specified a determinate prison term. Brown, 337 F.3d at 1159, 1162 (during the plea colloquy the prosecutor stated defendant would serve only 8.5 years if she behaved in prison); Buckley, 441 F.3d at 692, 698-99 (in change of plea hearing prosecutor stated defendant would receive maximum term of fifteen years).

Here, Petitioner contends the prosecutor promised he would be paroled after 10 years in prison so long as he stayed free from discipline. Petitioner has remained discipline-free during his entire time in prison, and thus has performed his end of the bargain. As a result, Petitioner argues, the Governor's decision to reverse the Board's grant of parole violated the terms of his plea agreement, since he had already served more than 16 years in prison at that point.

Unlike Santobello, Brown or Buckley, however, Petitioner has not produced any objective evidence to support his breach of contract claim. Petitioner's own declaration is insufficient. The record undisputably indicates that Petitioner was sentenced to a term of fifteen years to life with no promises of parole after 10 years. Therefore, habeas relief is not warranted on this ground.

**C.    Petitioner's Claim that Apprendi and Blakely Apply to Parole Cases is Unsupported.**

In Apprendi v. New Jersey, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

9

530 U.S. 466, 490 (2000). In Blakely v. Washington, the Court held that when a judge imposes a sentence, he or she must not look beyond the facts found by the jury. 542 U.S. 296, 303-04 (2004). The Court stated, however, that indeterminate sentencing does not raise the same constitutional issues because it does not infringe on the province of the jury. Id. at 308-09.

Petitioner argues that under Apprendi and Blakely the Board and Governor must set a parole date consistent with California sentencing guidelines. However, Petitioner cites to no authority indicating that the rules established by these cases apply to parole suitability determinations, let alone that the state court's determination that they do not was contrary to clearly established Federal law.

### D. Petitioner's *Ex Post Facto* Claim is Without Merit.

In 1988 the California Constitution was amended to give the Governor the power to review parole decisions by the Board. Cal. Const., art. V, § 8, subd. (b). Since Petitioner was already incarcerated at that time, he argues that retroactive application of this power constitutes an *ex post facto* violation of the California and United States Constitutions.

The Ninth Circuit has determined that the Governor's review of a Board's grant of parole does not violate the *ex post facto* clause. Johnson v. Gomez, 92 F.3d 964, 967 (1996); accord In re Rosenkrantz, 29 Cal. 4th 616, 652 (2002). This Court is bound by the Ninth Circuit's decision.

### CONCLUSION

For the foregoing reasons Leigh is not entitled to habeas relief. The state court's decision upholding the Governor's reversal of the Board's parole decision neither unreasonably applied Federal law nor rested on an unreasonable determination of facts. Accordingly, the Court DENIES the habeas corpus petition.

**IT IS SO ORDERED.**

Dated: August 24, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2006\2947\order denying petition.wpd       10